**LIDDELL et al. v. GORDON.   (No. 2518.)**

(Court of Civil Appeals of Texas. Texarkana. April 11, 1922. Rehearing Denied April 20, 1922.)

**1. Evidence ☞183(1½)—Affidavit of forgery places burden on party introducing deed to show execution prima facie.**

The impeachment of a deed by an affidavit of forgery imposed on the party relying thereon the burden of proving prima facie the execution of the lost original before a copy could be introduced in evidence.

**2. Evidence ☞187—Sufficiency of proof of execution of lost deed attacked by affidavit of forgery is for court.**

Whether or not prima facie proof of the execution of a lost deed attacked by an affidavit of forgery was made so as to entitle it to admission was a matter for the court to determine.

**3. Lost instruments ☞8(3)—Admission in evidence does not prevent subsequent proof on issue of forgery.**

The admission of a copy of a lost deed attacked by an affidavit of forgery on prima facie proof of execution did not settle the question of forgery, and either party had a right to offer testimony on that issue, and to have it passed on by the jury.

**4. Trial ☞351(2)—Question of forgery was for court when no request for submission to jury made.**

There being no request that the issue of forgery of a lost deed attacked by an affidavit

of forgery be submitted to the jury, its final determination was for the court, which, in deciding such issue, had a right to pass on the credibility of a witness.

**5. Trial ☞350(8)—Special issue as to notice of claim of title properly rejected when notice of claim of undivided interest was undisputed.**

A special issue as to whether plaintiffs had actual notice of claim of title to land by defendants' predecessors was properly refused, where it was undisputed that they had a good title to an undivided interest, and not denied that plaintiffs knew of the claim of title to such interest.

**6. Evidence ☞75—Notice of claim of title inferred when parties, though witnesses, did not deny notice.**

Though the burden was not on plaintiffs to show their lack of notice of an adverse claim to land, where there was strong circumstantial evidence tending to show actual notice, their failure to deny such notice when testifying as witnesses justified the inference that they had notice.

**7. Tenancy in common ☞15(7, 8)—Deed to stranger and possession thereunder notice of adverse claim.**

When a cotenant in possession is succeeded by a stranger who goes into possession under a deed, the possession and record of the deed constitute constructive notice to other cotenants that he is claiming all that the deed purports to convey.

**8. Tenancy in common ☞15(7, 8)—Record of conveyance to one managing property for cotenant and possession thereunder held notice of adverse claim.**

Where land was owned by husband and wife, and the surviving wife conveyed to a grandson who had been managing the place for her by a deed purporting to convey the entire estate, other grandchildren were charged with notice by the record of the deed and possession thereunder of his claim of title.

**9. Tenancy in common ☞15(7, 8)—Testimony as to holding of grantee in recognition of cotenant's claim not inconsistent with notice of hostile claim.**

Testimony that one to whom plaintiffs' cotenant conveyed, prior to his conveyance to a third party, was holding the property in full recognition of plaintiffs' title, only tended to explain the character of the possession after it began, and was not inconsistent with previous notice of its hostile appearance at its inception.

Willson, C. J., dissenting.

### On Motion for Rehearing.

**10. Lost instruments ☞8(3)—Testimony that grantor paid taxes insufficient to overcome presumption of actual conveyance.**

Where G. executed, delivered, and recorded a general warranty deed, and his grantee testified without contradiction that he bought the land and thereafter rented it to G., and collected rent, G.'s statement that he paid the

taxes was insufficient to overcome the presumption of an actual conveyance.

**11. Evidence ⊜⇒317(4) — Grantor's declarations hearsay, and not admissible to show there was no actual conveyance.**

Statements by one who had conveyed land by warranty deed and was paying rent to his grantee that he was managing the premises for plaintiffs' cotenant as he had theretofore done was not admissible to show that he had not in fact conveyed the land, being hearsay.

**12. Tenancy in common ⊜⇒15(5) — Declarations of one who had parted with title and had possession only as tenant incompetent to show land not claimed adversely.**

The declarations of one who had parted with his title and was in possession only as tenant, tending to show that he was not then holding adversely to third persons, could not affect the character of his grantee's claim of title, or prevent its being adverse.

**13. Tenancy in common ⊜⇒14—Conveyance to stranger is ouster of cotenant.**

The conveyance of the entire property by one cotenant to a stranger constitutes an ouster of the other cotenants.

**14. Tenancy in common ⊜⇒15(7, 8) — Where cotenant conveyed and paid rent to grantee, other cotenants not entitled to direct information of hostile claim.**

A cotenant out of possession is charged with notice of the manner in which the cotenant in possession manages the property and applies the rents, especially when he resides in the vicinity, and hence, where the tenant in possession conveyed the land and for five years paid rent to his grantee, his cotenants were charged with notice that the claim was hostile.

Appeal from District Court, Lamar County; A. P. Dohoney, Judge.

Suit by Solomon Liddell and others against J. A. Gordon. From judgment for defendant, plaintiffs appeal. Affirmed.

Ownby & Allen, of Paris, for appellants.
Moore & Hardison, of Paris, for appellee.

HODGES, J. The appellants filed this suit on April 11, 1919, against the appellee to recover an undivided half interest in a tract of 66 acres of land situated in Lamar county. The facts show that the property originally belonged to Reuben Liddell and his wife, Lucinda, and that they occupied the premises as their homestead. Reuben and Lucinda were the grandparents of the appellants. Reuben died many years before this suit was filed, and was survived by his wife and two children, Charley and Cynthia, all of whom were dead at the time this controversy arose. The appellants are the children of Charley Liddell, and claim title by inheritance to his one-half interest in the land. Cynthia left one child, George Liddell, under whom the appellee Gordon claims.

Among other defenses interposed to this suit is that of limitation, based upon the 5 and 10 year statutes. In the first trial of this case the court gave a peremptory instruction for the defendant. On appeal that judgment was reversed upon the ground that the evidence presented an issue which should have been submitted to the jury. See Liddell v. Gordon (Tex. Civ. App.) 226 S. W. 459. This appeal is from a judgment against the appellants, plaintiffs below, based upon an adverse verdict of a jury.

The appellants rely on their title by inheritance from their father. In the trial below the appellee, Gordon, established the following chain of title by the records of Lamar county:

(1) A deed from Lucinda Liddell to George Liddell dated April 28, 1902, consideration being $1 and love and affection. It appears that this deed was recorded one month after the date of its execution.

(2) Deed of trust from George Liddell to Benjamin Graham as trustee for the American Freehold Land Mortgage Company, dated April 28, 1902. This deed was to secure a debt for the sum of $600, due December 1, 1907.

(3) George Liddell to F. T. Gunn, warranty deed dated March 18, 1905, consideration being $207 cash and the assumption by Gunn of the $600 incumbrance described in the deed of trust to Graham.

(4) Deed of conveyance from F. T. Gunn to George Liddell dated February 15, 1910, consideration being $200 cash and the assumption by Liddell of the $600 indebtedness previously mentioned and three notes aggregating $500.

(5) A renewal deed of trust from George Liddell to Robert G. Patton, trustee for the American Freehold Land Mortgage Company, securing the original $600 and some other indebtedness.

(6) Deed of conveyance from T. M. Scott, substitute trustee for the American Freehold Land Mortgage Company, to D. H. Scott, dated March 7, 1916, consideration, $1,400, paid.

(7) Deed of conveyance from D. H. Scott to the appellee, J. A. Gordon, on the same date, consideration, $300 paid, and five notes for $200 each.

The appellee also relied upon evidence tending to show adverse possession by George Liddell and F. T. Gunn, under whom he claims, for more than 10 years prior to the time this suit was instituted. On the trial the court, in effect, instructed the jury that appellee had proved title to an undivided three-fourths interest in the land, and submitted only the issue of limitation under the five and ten year statutes. The jury found in favor of the appellee on his plea of limitation based upon the 10-year statute, but

against him on the other. The sufficiency of the evidence to support that finding is not questioned. Fourteen witnesses called by the appellee testified, in substance, as follows:

Witnesses all resided in the vicinity of the land in controversy, and knew the parties to this suit, and had known the land since the spring of 1902. Both George Liddell and the plaintiff had resided practically all of that time in the immediate vicinity of the land. With the exception of the period during which F. T. Gunn held the title, George Liddell had openly and notoriously asserted claim to the exclusive ownership of the land, and was continuously in the possession of it, cultivating, using, and enjoying it, without recognition, as far as they knew, of the right of any one else. He cultivated a part of the land himself, and frequently rented a part to others, and had always collected the rents from his tenants. Witnesses never heard of the plaintiffs asserting any right to or interest in the land or the rents. During that entire time the place was commonly and publicly known and referred to throughout the community as the George Liddell farm. George Liddell repeatedly, openly, and publicly asserted claim and ownership of the land, and on many occasions publicly offered to sell or trade it to the witnesses. Eleven of those witnesses testified that they knew Lucinda Liddell; that she died in the spring of 1907, while residing on another farm where she had been living about two years prior to her death. Frank T. Gunn, one of the witnesses above mentioned, further testified that he bought the land from George Liddell in March, 1905; that while owning it he rented to George Liddell in the same manner he rented land to other tenants, and that Liddell paid him rent each year; that he (Gunn) regularly paid taxes on the land as they accrued and before they became delinquent; that he also paid regularly to the loan company the accrued interest on the loan against the land, which had been assumed by him; that at no time during the five years did any other person assert any claim or interest in the land or the rents.

In rebuttal Simon and Solomon Liddell, two of the plaintiffs, testified substantially as follows: That George Liddell never at any time prior to the making and filing of the deed from himself to F. T. Gunn on March 18, 1905, claimed the interest of either of those parties in the land, but always recognized their interest. George Liddell told them that he was staying there and taking care of his grandmother, who died about January, 1910. George Liddell for appellants testified that he went to live with his grandparents, Reuben and Lucinda Liddell, when a boy, and continued to live with them until both of them died. After the death of Reuben Liddell George took over the management of the land in controversy and worked

it for his grandmother. He never prior to 1905 claimed the plaintiffs' interest in the land. Up to that time he told them that the land was a home for them all; that he was merely staying there with his grandmother. He had had the management and control of the place for his grandmother during Gunn's ownership, the same as before. He paid all the taxes while Gunn had the deed, except one year. He lived with his grandmother until her death on January 29, 1910.

The appellants attacked by affidavit the deed from Lucinda Liddell to George as a forgery. As evidence of its execution the appellee offered the county court records for the year 1902. These showed the record of a deed from Lucinda Liddell covering the entire property to George Liddell, and that the original was taken out of the clerk's office by George Liddell on May 22, 1902. He also proved by a witness who was a deputy county clerk in 1902 that the record of the filing of deeds in the office of the county clerk for that year was regularly and properly kept, and that the entry showing the delivery of the deed from Lucinda Liddell to George Liddell was in witness' handwriting, and that witness did deliver the deed as shown by the entry. He also offered in evidence an unrecorded will executed by Lucinda Liddell, dated November 12, 1897, in which she bequeathed her entire estate to George Liddell. That instrument was offered, not as a muniment of title, but as a circumstance tending to show the execution of the deed. Appellee proved that Judge Sam C. Bryson, who appears to have taken the acknowledgment of Lucinda to the alleged forged deed, was a qualified and acting notary public of Lamar county from 1901 to 1903; that a diligent search had been made for his notarial record, but it could not be found; that Judge Bryson was a man of the highest personal integrity, whose honor was above reproach; that a diligent search had been made for the original deed, but it could not be found.

George Liddell, testifying for appellants, said that Judge Rountree, of Paris, wrote the deed from his grandmother to him, and told him (George) to take the deed to Judge Bryson and have his grandmother sign it before Judge Bryson; that he took the deed as directed, and some time thereafter his grandmother went over to Judge Bryson's house, and Judge Bryson gave him (George) the deed. He further testified:

"I didn't see my grandmother sign the deed. Never heard her say she made her mark on it. She had no opportunity to do so. After Judge Bryson gave me back the deed I brought it to Paris and got Scott & Baldwin to make me a loan on the land. I filed the deed the same day."

The witness also testified that he later went to the clerks' office and took the deed

out. He supposed the deed was burned at the time the witness' house was destroyed by fire.

Upon this testimony the court admitted the alleged forged deed in evidence over the objection of the appellants. The objection then urged was that the execution of the deed had not been proved as required by the rules of common law.

[1-3] The impeachment of the deed by the affidavit of forgery imposed upon the appellee the burden of proving, prima facie at least, the execution of the original before the copy could be introduced in evidence. Whether or not that prima facie proof was made was a matter for the court to determine. But the admission of the copy at that stage did not settle the question of forgery. Either party had the right thereafter to offer testimony upon that issue and to have the jury pass upon the sufficiency of the evidence to establish the execution of the deed. Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 85; Thompson v. Johnson, 24 Tex. Civ. App. 246, 58 S. W. 1030.

[4] As part of the evidence tending to show a forgery appellants offered the statement of George Liddell that his grandmother did not sign the deed. After having admitted that statement, it was later, on objection, excluded. The qualification appended in allowing the bill of exception to the exclusion of that statement shows that the court regarded it as merely a conclusion of the witness, based upon other facts which he had been allowed to narrate in detail regarding that transaction. There being no request that the issue of forgery be submitted to the jury, its final determination was left to the court. In deciding it the court had the right to pass upon the credibility of the witness George Liddell, whose use of this deed immediately after its delivery to him was strangely at variance with the inference that it was a forgery. If the deed was not executed by Lucinda Liddell, or by some one for her, whose act she adopted, and George knew that it had not been so executed, then he was guilty of a fraud in knowingly using a forged instrument as the basis of the loan which he secured from the American Freehold Land Mortgage Company.

In view of the entire record, it cannot be said, as a matter of law, that the conclusion of the court regarding the issue of forgery would or should have been different had this excluded statement been formally retained in the record. Had that issue been left to the jury to pass upon, a different legal question would have been presented.

[5] Assuming, then, that the deed from Lucinda to George was valid and was properly admitted in evidence, we come then to the appellants' assignment based upon the refusal of the court to submit the following special issue:

241 S.W.—48

"Did the plaintiffs have actual notice of the claim of title by George Liddell or Frank Gunn before the 11th of April, 1911?"

An analysis of this interrogatory shows that it does not present the exact issue necessary to be decided in determining whether or not the defense of limitation had been established—that is: Did the plaintiffs have actual notice, prior to the date mentioned, that either Liddell or Gunn was claiming a title adversely? That both Liddell and Gunn, at different times, held a good title to an undivided interest in the land, is not disputed; nor is it denied that appellants knew that one or both of those parties were claiming title to such an interest during the entire period of time covered by their possession. A negative answer to the interrogatory is the only one which could have benefited the appellants. Yet such an answer was not warranted by the evidence, since it would imply that appellants did not have notice even of the real title which Liddell and Gunn held as joint owners of the property. For that reason the court was justified in refusing to submit the issue of notice in the form requested.

But, even if there should be read into this interrogatory language which it did not contain, and treat it as an inquiry concerning an adverse claim of title by Liddell and Gunn, still the court was justified in refusing to submit that issue. If the proof was sufficient to show an adverse possession extending over a period of more than 10 years before the filing of this suit in April, 1919—and there is no contention that it is not sufficient—the court could, under the evidence in this case, assume that the appellants had notice or even charged with notice of the hostile claim.

The request of the appellants for a finding upon the issue of actual notice is based upon the assumption that in this case the rule applicable to controversies between cotenants should control in determining the question of the origin of a title by adverse possession. In the case of Olsen v. Grelle et al. (Tex. Com. App.) 228 S. W. 927, a cotenant in possession of the common property executed a deed conveying the entire title to a stranger, who later went into possession under his conveyance. In discussing the legal effect of that instrument as notice when placed of record and followed by possession thereunder, the court said:

"That the cotenant not in possession must have actual knowledge of the fact that the cotenant in possession is disputing his right to the property, or such cotenant's possession and hostile claim must be so notorious as to authorize the presumption that the other joint owner had knowledge thereof, is well established in this state. Stiles v. Hawkins, 207 S. W. 89, and authorities there cited. But it is equally as well established that where one

goes into possession of property under deed, or deeds, executed by a cotenant, and purporting to convey the entire property, such possession is hostile to that of the cotenant, and he is charged with knowledge of the hostile character thereof."

See, also, authorities cited in notes 7th Ruling Case Law, pp. 854-5-6; also Allen v. Morris, 244 Mo. 357, 148 S. W. 905, Ann. Cas. 1913D, 1310. In the case last cited the Supreme Court of Missouri, after discussing the general rule regarding acts indicating a hostile claim on the part of a cotenant against another out of possession, says:

" 'It is not essential, however, that it be shown that such acts were brought to the notice of the cotenant.' * * * If such acts are such as to demonstrate to the immediate and surrounding neighbors and adverse claim, the cotenant must take notice thereof. In other words, his knowledge must be the general knowledge of the neighborhood wherein the land is situated."

[6] As proof of actual notice the appellee offered the testimony of 14 apparently disinterested witnesses, of the notoriety of the adverse claims asserted by Liddell to the land, of his offers openly made to sell the land, and his undisputed occupancy and collection of the rents for a long period of time. It was further shown that the appellants resided in the immediate vicinity of the land; and the inference is that they had every opportunity to hear and know what was heard and known by the neighbors concerning the claims of Liddell. Notwithstanding the fact that the appellants went on the witness stand in rebuttal after this testimony had been offered by the appellee, they did not deny any material fact which those witnesses had stated, nor did they deny having actual notice of the deeds to the land which had been recorded by Liddell and Gunn. Neither did they claim ignorance of any of the overt acts indicating an adverse claim by either Gunn or Liddell. If they were indeed ignorant of these notorious acts, or of other important facts tending to show a hostile claim, or the making of those deeds, the appellants had an opportunity to testify to such ignorance. Their failure to do so at a time when their knowledge concerning those facts was an important subject of inquiry in determining a vital issue is too significant to be ignored. There are times when silence becomes vocal, and this was one of them. It is true the appellants were not required to prove that they did not have notice, in order to put upon the appellee the burden of showing notice, but, after the latter had offered such strong circumstantial evidence tending to show actual notice, the failure to rebut that evidence, when appellants might have done so, by their own testimony, justified the inference that they could not truthfully deny notice. Welsh v. Morris, 81 Tex. 159, 16 S. W. 744, 26 Am. St. Rep. 801; Bailey v. Hicks, 16 Tex. 222; Chandler v. Meckling, 22 Tex. 36; Galveston, H. & S. A. Ry. Co. v. Walker, 38 Tex. Civ. App. 76, 85 S. W. 28.

[7, 8] As stated in the case of Olsen v. Grelle, supra, the rule requiring actual notice from a cotenant claiming by adverse possession against other co-owners is subject to an important qualification. When the cotenant in possession is succeeded by a stranger who goes into possession under a deed, the possession and the record of the deed constitute constructive notice that the stranger is claiming all that his deed purports to convey. That was practically the situation created when Lucinda Liddell conveyed the entire title to George Liddell in 1902. Her deed was promptly placed on record. While George was on the premises at that time, he had no legal right of possession as a joint owner. Upon the death of her husband Lucinda had the exclusive right of possession of the premises during the remainder of her life. While George and the appellants shared the title with her, they did not participate in the right of possession. George was on the place, not as a joint owner, but as an employee or tenant. He testified that he was there managing the place for his grandmother. Her conveyance was essential to invest him with any right of possession as part owner. Previous to that time he had no more rights on the premises than did an entire stranger to the title. Hence he went into the legal possession under the terms of his deed, as would a stranger. That being true, the appellants were charged with all the notice which the record of that deed and the possession thereunder in legal effect gave out. The same is true of the deed from George to Gunn in 1905, while Lucinda was still living on the place. That deed purported to convey the entire estate. Robles v. Robles (Tex. Civ. App.) 154 S. W. 230; Carr v. Alexander (Tex. Civ. App.) 149 S. W. 218; Village Mills Co. v. Houston Oil Co. (Tex. Civ. App.) 186 S. W. 785.

[9] It is true that appellants and George Liddell testified that the latter was during the time prior to his conveyance to Gunn holding the property in full recognition of the appellants' title. But that testimony only tended to explain the character of George's possession after it began, and was not inconsistent with previous notice of its hostile appearance at its inception. Notice of a hostile deed is one thing; but a subsequent disclaimer of a part of what the deed purported to convey is quite another. The admissions of George relied on by the appellants were pertinent only as showing no continuity of an adverse claim, or as explanatory of a situation of which the appellants were bound to take notice.

On objections which we think were untenable the court excluded certain declarations

made by George Liddell during the time he was holding as a tenant under Gunn. Those declarations tended to show that he (Liddell) was not then holding adversely to the appellants. Under the record as presented on this appeal, such testimony was immaterial upon any important issue. The character of the claim of title, whether adverse to appellants or not, was, during that period, to be determined from the attitude occupied by Gunn, who was then the holder of the title, and not by that of George, the tenant. Any suit filed by the appellants at that time which involved the right of possession or the title would have been against Gunn, not George. For that reason the declarations of the tenant concerning his own concessions of title could not qualify the character of the claim asserted by his landlord.

This suit has been pending for several years, and this is the second appeal. We feel that the litigation should be terminated, unless the record taken in its entirety indicates that an improper judgment has been rendered. A very careful examination has convinced us that no reversible error has been committed. The judgment will therefore be affirmed.

WILLSON, C. J. (dissenting). I do not agree with the other members of the court, in the conclusion reached that the trial court did not err when he refused appellants' request to submit to the jury an issue as to whether they had notice that the possession held by George Liddell, who owned the land in common with them, was adverse as to them or not. The conclusion is predicated on the assumption, which I think is not warranted, that it appeared from the testimony as a matter of law that appellants had such notice. That it did not so appear, but was a controverted question in the evidence, I think is reasonably clear, unless it ought to be said, and I think it ought not to be (Lynch v. Lynch [Tex. Civ. App.] 130 S. W. 461), that the record of the deed from Lucinda Liddell to George Liddell was such notice. If the record of that deed was not notice to appellants, then the justification, if there is any, for the ruling made by the majority, must lie in the parol testimony heard at the trial; for the suit was commenced April 11, 1919, less than 10 years after March 7, 1911, when the deed from Gunn reconveying the land to George Liddell was filed for record.

The substance of the pertinent parol testimony admitted as evidence is stated in the opinion filed by Judge HODGES. It will be noted that the appellants Simon and Solomon Liddell, owners of the land in common with George Liddell, testified that the latter never at any time prior to March 18, 1905, when he made the deed to Gunn, claimed their interest in the land, but, on the contrary, always recognized it as belonging to them. George Liddell's testimony with reference to this phase of the case, as set out in the statement of facts, was as follows:

"I went to live with Reuben and Lucinda when I was a boy, and lived with them until both of them died. After Reuben died I took the management of the 66 acres of land and worked the land for my grandmother. I never claimed plaintiffs' interest in this land; I never did; up to 1905 I always told them the land was a home for them all. I told them they had an interest in the land. I stayed there with my grandmother. I paid the taxes on the land every year from 1902 to 1913. No one paid for 1913, 1914, and 1915 until after I was put out of possession by the defendant. Before I made the deed to Gunn I did not claim their interest in the land. I have had the management and control of the place for my grandmother all the time same while Mr. Gunn had my deed as before; there was no change in the possession. I paid the taxes while Mr. Gunn had my deed, except one year. I don't know how the taxes were paid that year. I lived with my grandmother until her death on January 29, 1910."

It will be observed that, while Simon and Solomon Liddell testified that George Liddell never claimed their interest in the land before the time when he made the deed to Gunn, they did not testify that he ever to their knowledge claimed it at any time after he made that deed, and that, while George Liddell testified that he did not claim appellants' interest in the land before he made the deed to Gunn, he also testified that he had the management and control of the land for his grandmother after, as he did before, he made the deed, that there was no change in the possession, and that he "paid the taxes while," quoting, "Mr. Gunn had my deed, except one year." I think a jury might have construed the testimony that George Liddell never claimed appellants' interest before he made the deed to Gunn as meaning, not that appellants knew anything about the making of that deed at the time it was made, but that they knew at the time they testified that George Liddell had made such a deed and understood his act in making and delivering it to be the assertion by him of a claim to their interest in the land. And I think the jury might have found from the testimony of George Liddell that no change took place in the possession of the land after he made the deed to Gunn, and that he continued thereafter to manage and control the property for his grandmother as he did before he made the deed, that he never became Gunn's tenant and never held possession of the land for him, or, if he did, that appellants never had notice of the fact.

If the jury might have so found, then it is plain the trial court should have submitted an issue as to notice to appellants as they requested him to; for, when a case is submitted to a jury on special issues, as this one was, the statute makes it the duty of the court "to submit all the issues made

by the pleading" and the testimony. Article 1985, Vernon's Statutes. In such a case a party has a right to have the jury pass upon the "credibility of the witnesses and the weight to be given their testimony"; and no matter how many witnesses may testify in favor of one side of a controverted fact, nor how strongly in the opinion of the court the weight of the evidence may be on that side, he cannot, without ignoring the statute, deprive the party to the other side of the controversy of a right to have it determined by the jury.

Nor do I agree with the majority that the error of the court in excluding the declarations of George Liddell made during the time Gunn owned the land, tending to show that he was not holding it as Gunn's tenant nor adversely to appellants, was harmless. The ruling of the majority seems to be based on the assumption that when George Liddell made the deed to Gunn he became the latter's tenant. It is true that Gunn's testimony as a witness was to that effect. But George Liddell, as shown above, testified he was then managing and controlling the land for his grandmother. It seems to me it was important to appellants' right that they should have been permitted to show that at the very time, according to Gunn's testimony, George Liddell was in possession of the land as his tenant, George Liddell was asserting, in effect, that he was not Gunn's tenant.

I think the judgment should be reversed, and that the cause should be remanded to the court below for a new trial.

## On Motion for Rehearing.

HODGES, J. There are practically but two questions presented in appellants' motion for rehearing—the refusal of the trial court to submit the issue of actual notice, and the exclusion of testimony as to the character of George Liddell's holding of the premises from 1905 to 1910, while the title was in Gunn.

[10-12] The last question was decided against appellants, upon the ground that it was conclusively shown by the record that George Liddell had transferred all the title he had or claimed to Gunn in 1905. It is now suggested that there was some testimony tending to support a contrary conclusion. As evidence of an actual transfer, there was the general warranty deed from George to Gunn, dated, delivered, and recorded. Gunn testified that he bought the land and thereafter rented it to George and collected the rents in the usual manner. This testimony was uncontradicted by George or any other witness. The only testimony tending to support the suggestion that the transfer was not an actual conveyance was the statement of George that he paid all the taxes during that five years, except for one year, and the proffered testimony of plain-tiffs that George told them that he was on the premises managing it for his grandmother as he had done theretofore. The bare statement of George that he had paid the taxes was not sufficient to overcome the presumption of an actual conveyance of the property as disclosed by the deed offered in evidence. The testimony of the appellants of what George had told them concerning the character of his possession, which was excluded, would not have been admissible for the purpose of showing that George had not in fact conveyed the land to Gunn. Such declarations would have been hearsay. If it is correct, then, to say that George was only a tenant during the term of years when Gunn held the title, clearly his unauthorized statement regarding his tenure would not affect the character of Gunn's claim of title or prevent its being adverse to the appellants. For that reason the exclusion of those declarations did the appellants no injury.

[13] We pass, then, to a further consideration of the assignment complaining of the refusal of the court to submit the issue of actual notice. It may be conceded, for the sake of argument, that the possession of George as a cotenant prior to his conveyance to Gunn in 1905 was not adverse to the appellants. Excluding that period, more than 10 years elapsed from the beginning of Gunn's tenure until the institution of this suit. If the claim of title by Gunn was a controverted issue, and if the evidence of notice of his adverse holding was such that a finding either way would not be disturbed on appeal, there might be some reason to complain of the refusal of the court to submit in proper form the question of notice. However, if the record in this case conclusively shows conditions indicating hostile claims of which the appellants were compelled to take notice, it is not essential to the defense of limitation that direct information in some other form should have been communicated to them. The conveyance of the entire property by one cotenant to a stranger, as from George to Gunn, constitutes an ouster of the other cotenants, and information of that fact need not be direct. Madison v. Matthews (Tex. Civ. App.) 66 S. W. 803; Stubblefield v. Hansom (Tex. Civ. App.) 94 S. W. 411; Peeler v. Guilkey, 27 Tex. 357; Wood on Limitation, § 266. The recording of such a deed is notice to cotenants. Puckett v. McDaniel, 8 Tex. Civ. App. 630, 28 S. W. 362; Church v. Waggoner, 78 Tex. 203, 14 S. W. 581; Joyce v. Dyer, 189 Mass. 64, 75 N. E. 81, 109 Am. St. Rep. 603, and cases cited in the notes.

The case of Lynch v. Lynch (Tex. Civ. App.) 130 S. W. 461, is referred to as holding contrary to the views here expressed regarding the legal effect of the record of such deeds as notice to cotenants out of pos-

session. The facts of that case are radically different from those involved in this. There the husband and his second wife were occupying the premises. During that time the husband conveyed to the second wife by a deed describing the entire property. Suppose that notice of that fact had been actually communicated to the children of the first marriage. They could not have then sued for and recovered their mother's community interest in the land, because that transaction did not destroy the possessory rights of their father. The conveyance of his undivided community interest in the property was not an abandonment of his right to the continued use and occupancy of the homestead. That ground alone was ample justification for affirming the judgment. For it is well-settled that parties having the sole right of possession, as did the second wife and her husband in that instance, who was then residing with her husband, will not be permitted to use that possession as the basis of an adverse claim.

[14] A cotenant out of possession is charged with notice of the manner in which the cotenant in possession manages the property and applies the rents, especially if the cotenant out of possession resides in the vicinity of the land. The undisputed testimony in this case shows that during the 5 years that Gunn held the title the rents were paid to Gunn by George Liddell as a tenant. Those facts were too conspicuous to be disregarded in determining the issue of notice. The appellants could not, in the face of the exclusive appropriation of the rents by the cotenants in possession for so long a period of time, close their eyes and wait until some direct information had been communicated to them of a hostile claim.

The motion for a rehearing is overruled.