**BURTON et al. v. THORNTON et al.**

**No. 9951.**

Court of Civil Appeals of Texas. Galveston.
Jan. 4, 1933.

Rehearing Denied Jan. 25, 1934.

P. Harvey, of Houston, for plaintiffs in error.

S. O. Lovejoy, of Houston, for defendants in error.

LANE, Justice.

Jessie Burton, Irene Marshall and husband, Will Marshall, Ernest Warner, and Sam Ford filed this suit in the form of trespass to try title to lots 8, 9, and 10 out of the J. D. Long two-acre tract, situated in the city of Houston on the north side of Buffalo bayou, in Harris county, Tex., against Sam Thornton, Ruth Thornton, and Nathaniel Thornton.

They allege that they own the land in fee simple, holding title under a deed from the heirs of M. De Chaumes, deceased, to Kellon Coleman, of date November 16, 1871. In the alternative they prayed as follows: "That in the event the court should find that any of the defendants are entitled to any interest in said lands and premises that then, and only in that event, a writ of partition issue to partition the said lands, according to the respective interests of all the parties to this suit."

The plaintiffs did not allege that they and defendants were holding under Kellon Coleman as common source, or any other common source.

Defendants answered by plea of not guilty, and by pleading title under the three, five, and ten and twenty-five years of limitation. (Rev. St. 1925, arts. 5507, 5509, 5510, 5519).

The trial was before the court without a jury, and judgment was rendered decreeing that plaintiffs take nothing by their suit, and that defendants go hence.

The plaintiffs have brought the cause to this court upon a writ of error. For convenience they will be referred to hereinafter as appellants and the defendants will be referred to as appellees.

The plaintiffs introduced a patent of the Republic of Texas of date March 10, 1845, granting to Darius Gregg a small tract of land, described as being situated in "Harris County on the north side of Buffalo Bayou between and adjoining the surveys of Harris and Wilson and S. Harris."

They next introduced a deed from one T. D. De Chaumes and others claiming to be heirs of one M. De Chaumes, deceased, purporting to convey the land involved in the suit to Kellon Coleman. Jessie Burton, one of the plaintiffs, testified that Kellon Coleman, deceased, was her father; that her mother's name was Mary Coleman, the wife of Kellon Coleman, who died in 1910, after the death of Kellon Coleman; that Mary Coleman had two children, Irene and Jessie; that Irene married Will Marshall; that she had heard that Kellon Coleman had a wife before he married witness' mother, but she does not know her name; that Kellon Coleman had other children besides her and her sister Irene, and their names were Mary Thornton and Lucinda Warner; that Lucinda is dead and left two children, namely, Ernest Warner and Sam Ford, both of whom are living; that Mary Thornton had four children, namely, Will Lewis, Sam Thornton, Ruth and Namen Thornton; that Mary Thornton is dead; that she died about two years ago.

Upon the introduction of the evidence above stated, the plaintiffs rested.

Defendants offered in evidence a regular chain of conveyances from Darius Gregg down to one C. S. Long, conveying the land involved in this suit to C. S. Long. They then introduced a deed from J. C. Long to Michael De Chaumes purporting to convey the land in controversy.

As already shown, persons claiming to be heirs of M. De Chaumes executed an instrument purporting to convey the land in controversy to Kellon Coleman.

The uncontroverted evidence shows that Mary Thornton, the mother of Will Lewis and defendants Sam Thornton, Ruth Thorn-

ton, and Namen Thornton, lived in a house on the land in controversy for more than forty years, with her family; that she had it inclosed under fence and used it as her home, and claimed it as such. It was shown that, though plaintiffs lived in Houston and in the vicinity of the land, they made no claim to the land until a short time prior to the filing of this suit.

In the judgment rendered it is recited substantially that the facts and the law are with defendants, in that they showed that the heirs of De Chaumes, alleged to be the common source under whom the plaintiffs allege all parties hold, had no title to the land involved in the suit; that plaintiffs failed to show that the outstanding title had been acquired by the alleged common source, and to the contrary the defendants showed affirmatively that the alleged common source holders as alleged by plaintiffs had no title to the land; and that the defendants had peaceable, adverse possession and continuous residence and use thereof for more than thirty years against the record owner and the world.

We think the material findings of the court are amply supported by the evidence. While it is shown that Mary Thornton was a child of Kellon Coleman, there is no evidence showing that she took possession of the land during the life of Kellon Coleman, or as an heir of his or that she claimed to hold under him.

It is clear that the evidence fails to show that Kellon Coleman held title to the land.

In Ferguson et al. v. Ricketts, 93 Tex. 565, 57 S. W. 19, 20, in an opinion by the Supreme Court, it is said: "No presumption arises that the common source has acquired an independent outstanding title. Such presumption would nullify the rule that the title of the common source may be attacked by showing a superior outstanding title." See Caruthers v. Hadley (Tex. Civ. App.) 134 S. W. 757, and Honea v. Arledge et al., 56 Tex. Civ. App. 296, 120 S. W. 508, 509.

However, the appellants insist that the court erred in rendering judgment against them because the undisputed evidence shows that the plaintiffs and the defendants own the property involved as tenants in common, and there is no evidence that the defendants claimed the property as against the plaintiffs, or that they brought home to the plaintiffs notice that they or their ancestor, Mary Thornton, claimed the property adversely to the plaintiffs.

We overrule such contention. If plaintiffs' position with reference to their being a common source of title in Kellon Coleman be correct, yet under the testimony in this case defendants would have a better title to this property than plaintiffs would have. Defendants could not live on this property, claim it, improve it, cultivate it, and pay taxes on it for over half a century, and tell people in the neighborhood that they owned it, without it coming home to plaintiffs that this property was being held adversely to them; and especially as Jessie Burton and Irene Marshall were half-sisters to Mary Thornton, the mother of these defendants, and were living in the same vicinity during this long period of time. We think the trial court correctly held that the defendants, appellees here, have title to the land involved in this suit under the statutes of limitation.

In 7 R. C. L. p. 850, the following rule is stated: "But where one cotenant occupies the common property notoriously as the sole owner, using it exclusively, improving it and taking to his own use the rents and profits, or otherwise exercising over it such acts of ownership as manifest unequivocally an intention to ignore and repudiate any right in his cotenants, such occupation or acts and claim of sole ownership will amount to a disseisin of his cotenants, and his possession will be regarded as adverse from the time they have knowledge of such acts or occupation and of the claim of exclusive ownership" —citing authorities under note 8.

In Illg v. Garcia, 92 Tex. 251, 47 S. W. 717, 718, in an opinion by our Supreme Court, it is said: "Certainly, repudiation of the claim of a co-tenant, and notice thereof, may be shown by circumstances; and in cases like this, after all the parties are dead, the jury may infer such facts from long-continued possession under claim of exclusive ownership and nonassertion of claim by the other tenant."

In 1 R. C. L. Supplement, at page 199, the following rule is stated: "Though it is well settled that the tenant in common out of possession must have notice of the adverse claim of his cotenant in possession, before the statute of limitation will start to run, it is settled that the latter need not give actual notice to his cotenants. Sufficient notice may result from conduct of a character such as to leave no doubt to an observer that the exclusive right of enjoyment is asserted"—citing Allen v. Morris, 244 Mo. 357, 148 S. W. 905, Ann. Cas. 1913D, 1310.

In the case cited, it was held that, where children of a second wife of their father had for about forty years been in undisputed possession of certain premises, making improvements and paying taxes, and during that time no child of the first wife claimed an interest in the land, the children by the second wife acquired a title by adverse possession as against the children by the first wife, though on the death of the deceased owner all the children became tenants in common.

892

See Moore v. Hoffman, 327 Mo. 852, 39 S.W. (2d) 339, at page 343, 75 A. L. R. 135, column 2.

For the reasons above pointed out, the judgment is affirmed.

Affirmed.