## FORD v. WEISHER.    (No. 10294.)

(Court of Civil Appeals of Texas. Fort Worth. May 26, 1923. Rehearing Denied June 30, 1923.)

**1. Tenancy in common ⬦⬦⬦15(10)—Evidence held to warrant conclusion that one cotenant promised to pay taxes for the use of another cotenant's interest.**

Evidence *held* to warrant the conclusion that one cotenant recognized the interest of another cotenant who had left the state, and promised to pay taxes assessed against that interest for the use of the land.

**2. Tenancy in common ⬦⬦⬦15(9)—Cotenant failing to pay taxes according to agreement cannot take advantage of his possession or tax sale.**

Where one cotenant recognized the interest of another cotenant, and promised to pay taxes for the use of the land, he cannot take advantage of possession or of his failure to pay the taxes, by virtue of which the land had been sold.

**3. Tenancy in common ⬦⬦⬦15(10)—Possession of cotenant presumed in common right.**

A cotenant's possession will be presumed to be in right of the common title, and he will not be permitted to claim under the statute of limitation unless it clearly appears that he has repudiated his cotenant's title, and is holding adversely to it.

**4. Tenancy in common ⬦⬦⬦15(9)—Possession and payment of taxes not assertion of adverse right.**

Mere possession and payment of taxes on the property will not constitute the assertion of an adverse right.

**5. Tenancy in common ⬦⬦⬦19(3)—Cotenant buying at foreclosure takes title for benefit of all cotenants.**

A cotenant buying at a foreclosure sale takes title for himself and as trustee for the other cotenants.

Appeal from District Court, Stephens County; W. R. Ely, Judge.

Suit by George J. Weisher against O. W. Ford and others. Judgment for plaintiff, and defendant Ford appeals. Affirmed.

W. P. Sebastian and T. B. Ridgell, both of Breckenridge, for appellant.

Benson & Dean, of Breckenridge, for appellee.

CONNER, C. J. [1] George J. Weisher, of New Mexico, instituted this suit on March 9, 1921, against C. W. Ford, and others not necessary to name, seeking to recover an undivided one-fourth interest in a survey of land described in his petition, situated in Stephens county. The defendant Ford's defense was based upon the three, five, and ten year statutes of limitation, but a trial before the court resulted in findings and judgment against him, and he has appealed.

The facts necessary to an understanding of our conclusion are substantially as follows: The tract of land involved was patented by the state to Jacob Weisher, who, on July 28, 1884, executed and delivered to appellee, George J. Weisher, a warranty deed to "an undivided one-fourth interest" therein. On December 17, 1884, said Jacob Weisher executed and delivered to appellant Chas. W. Ford a conveyance of "all his right, title, and interest in an undivided one-third interest" in the land in controversy.

Appellant testified, among other things:

That the land "was outside land. It was rough land, and was not fit for anything much only for grazing, and very little at that. * * * This land laid outside until I think 1895. I think it was fenced in 1895; I have forgotten the date. * * * It was fenced in a pasture of about 500 acres. I was not living here then. * * * The land was sold for taxes, I believe it was 1902 or 1903, I forget

⬦⬦⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

which, I got a deed from Mr. Love, the sheriff. After that deed under the sheriff's sale I have had it leased pretty much all of the time since for grazing. * * * As to me rendering it for taxes, I told the parties that had it leased to render it for me, and the taxes were always in my name."

Appellant then introduced tax receipts and redemption certificates for taxes paid by and in behalf of appellant covering the years 1912 to 1920, inclusive. On cross-examination he testified:

"As a matter of fact, from 1911, 1912, to 1917 Mr. Goodwin paid the taxes on it. He paid the taxes for me. * * * I told Mr. Goodwin to render the land for me and pay my taxes and to send me the tax receipt. I told Mr. Goodwin to use that land and to pay the taxes on it for the use of it. I was to get that for the use of it."

Appellant denied that he had told appellee George Weisher "when he left here * * * that he would look after it and pay the taxes on it and mine coal for the purpose of paying the expenses for him and for Jacob Weisher after they went away. I did not know George Weisher had any interest in that land whatever until 1919, when I got the abstract." He also denied that he told "Mr. Lynn at Crystal Falls immediately after George and Jacob Weisher left there that they were leaving me in charge of it and I was going to render it for them." He further testified that he heard that Jacob and George Weisher went to White Oak, N. M., and that he probably wrote Jacob after they went out there; that since he bought it under the sheriff's deed he had been in possession of it and had been paying the taxes thereon; that no one had claimed it during that time, or interfered with him in any way; that the first time he knew of any claim on the part of Mr. Weisher was when he got the abstract, which was along about the time Weisher filed suit.

In rebuttal the appellee offered Mr. J. M. Lynn, who testified:

That he was acquainted with Jacob and George Weisher. That during the years 1887 to 1890 he lived at Crystal Falls, about 200 yards from where appellant Ford lived, and had occasion to be about the place where Mr. Weisher stayed. He was there frequently. "I do not remember hearing Mr. Ford say anything about being in charge of the property after Mr. Weisher went away, but I knew they had turned it over to him and he had charge of it. I knew about the time that he had left and he had turned his place over to Mr. Ford, and he looked after it and took care of it and paid the taxes. * * * I would not say for sure that I ever heard Mr. Ford say that. I talked to him about the matter some, but I do not remember. It was just my understanding that he was to look after it. That was my understanding of the agreement. That was hearsay. I talked with him some about it, but I won't say for sure what he said, as I do not remember what he said. That has been 40 years ago."

Appellee, George J. Weisher, testified:

That he was a brother of Jacob Weisher, who is now dead, and during the years 1887 to 1889 he lived at Crystal Falls. That he was acquainted with C. W. Ford, who knew that he had an interest in the land in controversy at the time he left. That Mr. Ford came over to his place and visited him, as well as Jacob Weisher, at different times. That Jacob Weisher left in February, 1888. That before leaving he heard a conversation between Jacob Weisher and Mr. Ford. In that conversation "Jacob said to Charley, 'You look after our interest and look after the taxes;' and Charley said, 'I will look after it the same as if it was my own.' There was something said about taking the coal out of the land and selling it for that purpose. He says, 'You can have all the coal you mine;' and he told him to use the proceeds for himself, and to look after the taxes, and Charley said he would do so."

Appellee further testified:

That he had a conversation with appellant just prior to the time he (appellee) left in 1889, in which he said: "'Now Charley you can take the coal. I got the mine in shape at that time;' and I says, 'You can take the coal out, and you can make some money;' and I says, 'You can have the minerals;' and he said he would do so. He said he would look after the taxes, and he said he would look after our interest. I operated that mine when I was back here in 1888 until I left in 1889. During the spring of 1889 I delivered coal here in Breckenridge to this courthouse, and also to the courthouse at Albany, and some of the stores here. * * * I paid the taxes on this property during the time I was here. * * * I have been outside the state ever since 1889. * * * I asked Charley Ford to look after it. I asked him to look after the land, and he said 'I will pay the taxes, and look after your interest as well as mine.' That was in 1889. From 1889 until this date I never wrote a letter to Mr. Ford. * * * That land was worth very little when we left it out there. I would not say what it was worth. I know what I paid for a quarter interest. I paid $520. It was worth that to me. * * * During all those years I did not write the tax collector or the tax assessor or to Mr. Ford about the land. I considered Mr. Ford was looking after it. I did not write anybody about the land. I did not know it had been sold for taxes until I made investigation. * * * When I told Charley Ford to look after it and pay the taxes there was no specific time as to how long he was to do that, whether it was to be 40 years or otherwise. No time was mentioned. * * * The truth of the matter is I did not regard that land worth anything when I went off, and I heard of the oil boom, and then I began to make inquiry concerning it. * * * If it had not been for the oil boom I never would have come back at this time. * * * I had not been on it for 20 years. Since 1889 I have lived out of the state of Texas. * * * The real value of that land is in the coal, and not in the surface. * * * When I went away in 1889 I never intended to abandon this land. I have never intended, all during these years, to abandon it.

I expected Mr. Ford to look after it and pay the taxes on it while I was gone."

[2-4] The evidence without dispute shows that appellee was in fact the owner of an undivided one-fourth interest in the land in controversy; that appellant was claiming under a conveyance of an undivided one-third interest in the same land; and the evidence warrants the conclusion that must be imputed to the court's judgment that appellant had full knowledge of appellee's interest. The evidence also warrants the conclusion that at the time appellee left the state appellant not only recognized the interest of appellee, but also promised to care for such interest, and to pay the taxes that might be assessed against it for the use of the land. It was appellant's legal duty, therefore, to do so, and he can take no advantage of a possession held by him under such circumstances, or of a failure on his part to pay the taxes, by virtue of which the land had been sold. There was no proof whatever that appellee at any time prior to shortly before the institution of this suit was notified that appellant was claiming the land adversely to him, and appellee's mere silence during the years of his absence can certainly not be given the effect of divesting his title. The parties were undoubtedly cotenants. In such case the possession of a cotenant will be presumed to be in right of the common title. He will not be permitted to claim the protection of the statute of limitation unless it clearly appears that he has repudiated the title of his cotenant, and is holding adversely to it. Mere possession and payment of taxes on the property will not constitute the assertion of an adverse right; there must be something more. Stiles v. Hawkins (Tex. Com. App.) 207 S. W. 89, Phillipson v. Flynn, 83 Tex. 580, 19 S. W. 136, Alexander v. Kennedy, 19 Tex. 488, 70 Am. Dec. 358, and numerous other authorities that might be cited. Of course, a cotenant's possession may be of such hostile character and so notorious as to authorize the presumption that the other joint owner has knowledge thereof; but in the case before us appellant is not shown to have been in actual occupation or to have cultivated or used the land in any way, his possession being only as a lessor of others who had the land inclosed, together with other lands, as the evidence shows, of eight or ten times larger area.

[5] In the case of Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265, it was said "that in order to support the ten years statute of limitation there is something more necessary than the mere inclosure." It has also been ruled many times that ordinarily the payment of taxes on or the purchase of common property at a foreclosure by one cotenant inures to the benefit of other cotenants as well. See Henyan v. Trevino (Tex. Civ. App.) 137 S. W. 458; Johnston v. Johnston (Tex. Civ. App.) 204 S. W. 469. In the case of Magruder v. Johnston (Tex. Civ. App.) 233 S. W. 665, it was said:

"A cotenant buying at a foreclosure sale takes title for himself and as trustee for the other cotenants."

Other citations of authority might be made, but we think what we have said sufficient to clearly show that the judgment of the trial court cannot be disturbed, and that it should therefore be affirmed; and it is accordingly so ordered.