McKENZIE v. GRANT et al.

No. 9625.

Court of Civil Appeals of Texas. San Antonio.

March 25, 1936.

Rehearing Denied May 6, 1936.

Tom S. Henderson, Jr., R. B. King, and Leslie S. Lockett, all of Corpus Christi, for appellant.

Todd & Todd and Gordon Boone, all of Corpus Christi, for appellees.

BOBBITT, Justice.

The numerous and involved issues, as well as the several persons with conflicting and complicated claims and contentions relating to various properties included in this proceeding, necessitate a full, even though very lengthy and tedious, statement of the case:

Appellees, Phœbe Jane McKenzie Grant, joined by her husband, William Grant, Cora McKenzie Nash, a feme sole, Louisa McKenzie, a feme sole, and Isabella McKenzie Walker, joined by her husband, T. W. Walker, instituted this suit on the 21st day of October, 1930, in the Twenty-Eighth judicial district court of Nueces county, Tex., against appellant, seeking the partition of three tracts of land, one tract containing 165 acres, one of 350, and one of 26 acres, in Nueces county, alleging said land to be owned by the estate of William McKenzie and wife, Jane McKenzie, and inherited by the plaintiffs and defendant from their mother and father, William McKenzie and Jane McKenzie, and from their deceased brother, William G. McKenzie. Appellees alleged that the estimated value of the property was $27,050; that said land was susceptible of partition, and that the plaintiffs and defendant owned share and share alike of said property, each being entitled to a one-fifth undivided interest.

The appellant, defendant below, Charles McKenzie, answered, pleading: (1) His general demurer; (2) general denial; and (3) special answer and cross-action as follows: (a) His statutory remedy of trespass to try title against appellees; (b) the three, five, ten, and twenty-five year statutes of limitation (Vernon's Ann.Civ.St. arts. 5507, 5509, 5510, 5519), with the exceptions that he admitted in his answer that the plaintiff Phœbe Jane McKenzie Grant, Cora Nash, and Louisa McKenzie are the owners of an undivided one-half interest in and to the first and third tracts described in plaintiffs' original petition and that they had no interest in the second tract; (c) his plea of laches; (d) his affirmative pleas on the three, five, ten, and twenty-five year statutes of limitation, in support of his alleged title.

Subsequent to the filing of the above petition and answer the appellant, Charles McKenzie, on September 12, 1933, filed his application for the probate of the last will and testament of his brother, William G. McKenzie, who died on the 24th day of January, 1930, alleging that he was named as independent executor without bond in such will, and that by the terms of such will all of the property of the said William G. McKenzie, both real and personal, was devised to applicant; that prior to his death the said William G. McKenzie had conveyed all of his property, both real and personal, to applicant, and that the purpose of said application was to secure the probate of said will as a muniment of title. The appellees Cora Nash, Mrs. Isabella Page Walker, and Miss Louisa McKenzie filed their protest to the application, alleging that they had a substantial and material interest in the property and estate of said William G. McKenzie; that at the time of the alleged execution of the will the said William G. McKenzie was of unsound mind, and did not have the mental and physical capacity required by law to make and execute a valid will, and that said alleged will was void for such reason; that at and prior to the time of the alleged execution of the will the said William G. McKenzie was under the undue in-

fluence, will, and domination of his brother, Charles McKenzie, and that the will was not the free and voluntary act, will, or deed of the said William G. McKenzie, but that the same was the act, will, and deed of the said Charles McKenzie.

After the introduction of the testimony on such hearing, the county court of Nueces county entered his order probating such will. This cause was appealed by the contestants and appellees herein Cora Nash, Miss Louisa McKenzie, and Mrs. Isabella Page Walker to the Twenty-Eighth judicial district court of Nueces county, which court consolidated the partition suit styled Phœbe Jane McKenzie Grant et al. v. Charles McKenzie, No. 11390–A, with the appealed cause No. 13449–A, Estate of William G. McKenzie, deceased, by order dated March 27, 1934.

On the same date, appellees Cora McKenzie Nash, Louisa McKenzie, and Isabella McKenzie Walker filed their first supplemental petition in answer to the first amended original answer and cross-action of defendant, Charles McKenzie, appellant, alleging: (1) Their general demurrer; (2) general denial; and (3) a special answer setting up coverture as to the plaintiffs Phœbe Jane McKenzie Grant and Cora McKenzie Nash; (4) their special answer alleging that appellees and appellant were tenants in common at the time of the alleged running of the statute of limitation, and that the possession of Charles McKenzie inured to benefit of plaintiffs, and that such possession was not adverse; (5) special answer alleging that the deed executed by William G. McKenzie conveying all his interest to his brother, Charles McKenzie, appellant, was void, for the reason that the said William G. McKenzie at the time of the execution of such instrument was wholly incapable of transacting his affairs, and was without sufficient mental capacity to make, execute, and deliver a valid deed of conveyance or any other contract of conveyance with reference to his property; and that the same was executed while under the influence of the said Charles McKenzie, appellant, and subject to the will of Charles McKenzie; and (6) a special answer by the appellee Isabella Page Walker pleading error, accident, mistake, and fraud, and seeking reformation of a deed executed by said appellee to appellant, Charles McKenzie.

In reply to plaintiff's first supplemental petition, defendant filed his first supplemental answer, including (1) general demurrer; (2) special exceptions; (3) general denial; and (4) his special answers alleging: (a) That Phœbe Jane McKenzie Grant became twenty-one years of age on the 19th day of November, 1880; that Cora Nash became twenty-one years of age on the 22d day of February, 1890; since which time the bar of statutes of limitation, pleaded in defendants' answer and cross-action had long since run; (b) that by Act of April 1, 1895 (Laws 1895, c. 30), the defense of coverture was abolished, and that the bar of the statute of limitation thereupon commenced to run against the said Phœbe Jane McKenzie Grant and Cora Nash, (c) that, if the cause of action of the said Phœbe Jane McKenzie Grant did not accrue during their minority, then the same did accrue prior to their marriages, and the running of the statute of limitation, having been set in motion, was never tolled; (d) the reiteration and adoption of all pleas of limitation and laches set out in defendant's first amended original answer and cross-action and affirmatively pleaded such bar of limitations and laches in support of plaintiffs' title to said land; (e) plea of the four-year statute of limitation (Vernon's Ann.Civ.St. art. 5527), and plea of laches against the plaintiff Isabella Page Walker on her claim for reformation of the deed executed by said plaintiff to appellant twenty-one years preceding the filing of the suit; (f) that, if defendant and plaintiffs were cotenants, the notice of the adverse claim of defendant was made prior to the beginning of the statute of limitation.

The appellees Lucretia Jane Nash, a feme sole, Oscar Fitzallen Nash, and Dempsey William Nash intervened in said cause in lieu of the plaintiff Phœbe Jane McKenzie Grant, and adopted all of the pleadings of the plaintiffs as theirs.

Plaintiffs then filed their trial amendment on March 29, 1934, for the purpose of correcting an allegation made in paragraph one of their original petition and setting up: (1) That plaintiff Cora McKenzie Nash and Louisa McKenzie each owned an undivided one-fifth interest in all of the described land and premises and that the interveners, plaintiffs Lucretia Jane Nash, Oscar Fitzallen Nash, and Dempsey William Nash, jointly owned an undivided one-fifth interest in said lands and premises; and that the plaintiff Isabella Page Walker owned an undivided one-fifth interest in and to all of said lands and premises except the 172.1-acre tract, and that the defendant,

Charles McKenzie, owned the remaining undivided interests in said lands; (2) that the deed of the plaintiff Isabella Page Walker to defendant, Charles McKenzie, purporting to convey to the said Charles McKenzie all of the right, title, and interest of the said Isabella Page Walker was obtained through mutual mistake or fraud of defendant Charles McKenzie, and it was her intention to convey no further interest than an undivided interest of 33⅓ acres, more or less, in and to 172.1 or 165 acre tract of land.

In reply to plaintiffs' first trial amendment, defendant filed his first trial amendment, alleging: (1) General demurrer; (2) special exceptions; (3) general denial; and (4) his special answer alleging that Isabella Page Walker conveyed to defendant all her right, title, and interest in and to such real estate as she may have inherited from her mother, Isabella Page, deceased, a daughter of William McKenzie and Jane McKenzie, deceased, and that the said Isabella Page Walker was estopped by said deed to claim any interest in said 350 acres of land described as second tract in plaintiffs' original petition.

The trial court overruled all demurrers and exceptions except defendant's special exception to the allegation in paragraph 5 of plaintiffs' first supplemental petition, which was sustained, to which action of the court defendant duly excepted.

Defendant presented his motion for an instructed verdict at the close of plaintiffs' testimony and at the conclusion of all testimony, which motions were overruled.

After the conclusion of the evidence, and before the charge was read to the jury, counsel for plaintiffs presented to counsel for defendants a suggested charge and special issues to be submitted to the court. After examining same, counsel for defendant appeared in open court and requested the court, before preparing his charge to the jury, to make his ruling upon the questions of law, both sides stating in open court that in their opinion there was no conflict in the evidence except upon the issue of testamentary capacity of William G. McKenzie and the question of undue influence exerted upon him by Charles McKenzie, with the exception that defendant stated in open court that, if the court should accept the view of counsel for plaintiffs that as a matter of law the 350-acre tract of land was community property of Jane and William McKenzie, then and in that event there

would arise controverted issues of fact involved in the pleas of limitation, repudiation of cotenancy, and laches; the question as to whether the consideration for the deed from John S. McCampbell to Jane McKenzie was paid with community funds of Jane and William McKenzie or by funds of William G. McKenzie; and counsel for defendant further stated that, if the court took the view of counsel for plaintiff that under the law the deed of Belle Page to Charles McKenzie was under a mistake of fact, then and there arose questions of fact to be submitted to the jury involving the pleas of limitation, laches, and estoppel, and that the evidence was conflicting upon all of said issues. Counsel for defendant then requested the court to state his rulings and findings upon the above-mentioned questions of law before the counsel for defendant should be required to present their objections to the court's charge. The court then stated that he would present issues to the jury "only" on the questions of testamentary capacity and undue influence, and would not at that time rule on any questions propounded by counsel for defendant.

Defendant requested six special issues and two special charges, all of which were refused. Then, prior to the reading of the court's charge to the jury, defendant presented numerous objections to the court's charge, all of which were overruled.

The cause was submitted to the jury upon six special issues, accompanied with appropriate definitions and instructions. Such issues were found and determined by the jury as follows: (1) That William G. McKenzie had testamentary capacity to make a valid will on the 12th of March, 1927, at the time he executed the instrument (will) in controversy; (2) that defendant, Charles McKenzie, exercised undue influence over the mind of William G. McKenzie as to the act of making the instrument dated March 12, 1927, and offered for probate as the last will of William G. McKenzie; (3) that such undue influence exercised by said Charles McKenzie over the said William G. McKenzie induced him to execute the instrument, and subverted and overthrew the will of William G. McKenzie, and destroyed his free agency and caused him to execute the instrument offered for probate as his last will, when, but for such influence, he would not have done so; (4) that William G. McKenzie was mentally capable of understanding the nature and consequences of his acts at the time he signed and acknowledged the deed from said William G.

McKenzie to Charles McKenzie, dated January 14, 1930; (5) that defendant, Charles McKenzie, exercised undue influence over the mind of said William G. McKenzie as to the act of making said deed of January 14, 1930; (6) that said William G. McKenzie executed and delivered said deed by reason of undue influence exercised over him by Charles McKenzie.

Defendant thereupon moved for judgment non obstante veredicto, which the court overruled.

The court, after extending the term, rendered judgment that the contest of the application of Charles McKenzie to probate the alleged will of William G. McKenzie be in all things sustained, and that the application of Charles McKenzie to probate the said will be denied, to which action and judgment of the court defendant, Charles McKenzie, then and there duly excepted. The court further ordered that the deed alleged to have been executed and delivered by William G. McKenzie to defendant, Charles McKenzie, dated January 14, 1930, be canceled and set aside, and that as to the cross-action of the defendant, Charles McKenzie, against plaintiffs for the recovery and possession of the 350-acre tract of land, and an undivided half interest in the 165-acre and 26-acre tract of land, said defendant take nothing, save and except as to the undivided interest in said three several tracts of land being: First tract, 165 acres; second tract, 26 acres; third tract, 350 acres, as follows: In the first and second tracts of land the parties are entitled to undivided interests and shares, to wit: Plaintiffs Mrs. Cora McKenzie Nash and Miss Louisa McKenzie, $\frac{9}{30}$ each; interveners Lucretia Nash and Oscar Fitzallen Nash and Dempsey William Nash, jointly, $\frac{9}{30}$; plaintiff Isabella Page Walker $\frac{1}{30}$; and defendant, Charles McKenzie, $\frac{11}{30}$.

That the parties were entitled to undivided interests and shares in the third tract of land, as follows: Plaintiffs Mrs. Cora McKenzie Nash and Miss Louisa McKenzie $\frac{18}{120}$ each; interveners Lucretia Jane Nash, Oscar Fitzallen Nash, and Dempsey William Nash, jointly, $\frac{18}{120}$; plaintiff Isabella Page Walker $\frac{18}{120}$; and defendant, Charles McKenzie, $\frac{48}{120}$.

That all of said property was susceptible of partition; and the court proceeded to direct partition, to appoint commissioners and a surveyor to assist the commissioners in making this partition, and decreed all costs against the defendant, Charles McKenzie. To all of said findings and determination of the court and to said judgment defendant, Charles McKenzie, duly excepted. A motion for a new trial was duly filed by the defendant within the time required by law, and defendant then filed his first amended motion for new trial, which was overruled. Defendant duly excepted and gave notice of appeal to this court. The defendant then requested, and the court filed, his findings of fact and conclusions of law on July 19, 1934, to all of which defendant duly excepted and filed his supersedeas bond within the time required by law, and the appeal was duly perfected, and the cause is now before this court for review.

The trial judge filed numerous and detailed findings of fact based upon what he asserted to be undisputed evidence and conclusions of law pursuant thereto, which form the basis of several of the assignments of error as claimed by appellants. We will hereinafter discuss the court's findings and conclusions as they relate to the different assignments and propositions raised by appellant, instead of making any general reference thereto at this time.

We are confronted in this case with an unusually large and involved record. Much of the testimony and evidence is not material to any of the controlling issues in the appeal; and, while we have carefully reviewed the entire record, we now undertake to summarize the material issues and contentions of the parties as briefly as possible and as may be consistent with a full and concise determination and disposition of the assignments and propositions asserted in the appeal.

William and Jane McKenzie were pioneer citizens of Nueces county, who acquired the 165-acre tract of land involved herein on June 5, 1852. Apparently they traveled a rocky road in those early years. By deed bearing date October 20, 1867, from Benjamin F. Neal and H. W. Berry as Executors of the estate of H. L. Kinney, deceased, William McKenzie undertook to acquire the title, and thereunder did in fact acquire possession, of the 350-acre tract of land, the title to which tract forms the major issues in this cause. The history and handling of this particular tract is involved and complicated, but we think the rights of the parties therein as here at issue have been fully traced and the respective claims thereto ably present-

ed and urged by counsel for all of the contending parties. On December 22, 1873, William McKenzie acquired the 26-acre tract of land from the said executors of the estate of H. L. Kinney, deceased, as shown by deed duly recorded in the deed records of Nueces county on May 31, 1879. Such three tracts of land include the entire property involved in this cause; but, as above indicated, the major issues and the principal property questions concern the 350-acre tract. We will refer to the properties as the 165-acre, the 26-acre, and the 350-acre tracts, even though they may sometimes be referred to in the record and briefs as containing different acreages.

Father William and Mother Jane McKenzie lived together, as husband and wife, in Nueces county, prior and during the year 1852, and thereafter until the husband's death, in such county, on October 31, 1878, when and where he died intestate, leaving his wife, Jane, and his six children, hereinafter named, surviving him as his heirs at law. William and Jane had the following children, and in the order stated: (1) William G., born August 14, 1858, who was never married, and who died in Nueces county January 24, 1930, leaving an alleged will which was finally denied probate by judgment of the court in this cause. His heirs at law were his one brother and four sisters, or their descendants, then surviving. (2) Phoebe Jane, born November 19, 1859. She married one Grant. Mrs. Grant was living at the time of the trial, but had conveyed all her interest in all of the property to other parties to the suit; (3) Isabella, born March 20, 1863, deceased, and survived by her only child, Isabella Page Walker; (4) Charles, born November 29, 1865, who is living, and who claims all the interest of his deceased brother, William G., under the claimed will and deed, involved in this cause; (5) Cora, born February 22, 1869, who married one Nash, now deceased, and survived by her three children, Lucretia, Oscar, and Dempsey Nash; and (6) Louisa, born March 8, 1871, who never married, and who is still living.

The mother, Jane McKenzie, continued to live with her said children on the property under consideration after the death of her husband; and she died, intestate, there at the old homestead on July 9, 1909. The record before us reveals a struggle for existence and a devotion to the family unit which characterized the lives of many of the early pioneers of Texas.

When Father William McKenzie acquired the first tract of land in 1852, he established his home thereon. It was known as "Mud Lodge." As and when he purchased the other two tracts they were added to, and became a part of, his home and ranch; and, while the house or residence of the family was changed to another location, he and his family always lived on this property until his death there on October 31, 1878. Following his death, his widow, Jane, and the named children carried on under various and distinct hardships until the mother passed away, and until the different children grew up and went their several ways. The record is clear, however, that the father bought, secured conveyances of, paid for, and thought he owned, these three tracts of land. He certainly claimed, under deeds duly recorded, used, and maintained possession of all the land from the date of acquisition until he died thereon. And continuously thereafter the widow and children so claimed used, and held possession of all the land, notwithstanding the suit that was pending for the recovery of the 350-acre tract at the time of the father's death, and the various claims, judgments, and settlements thereafter asserted and made against and by the widow and the children. This fact situation is important in view of the later claims and differences which arose between the children, and which form the basis of this suit.

Appellant, Charles McKenzie, contends that he owns the entire title to the 350-acre tract of land for these asserted reasons: (1) That this property was lost entirely by the McKenzie family through a judgment entered on March 1, 1875, in favor of one Powhatan Jordan against William McKenzie, in the district court of Nueces county, wherein William McKenzie unsuccessfully sought to enjoin the sale of said land by the sheriff of Nueces county to satisfy a judgment in the same court, and in another suit, theretofore secured against one John Cannon, who had conveyed the land to McKenzie; and which judgment was based upon a claimed vendor's lien against the land, asserted to be superior to the title of McKenzie; (2) that the property thus lost to the McKenzie family on a suit pending at the time of the father's death was, after his death, pur-

chased by the widowed mother in her own name; and it therefore became and was her separate property, and not the community property of herself and children; (3) that such property was thereafter, on March 26, 1883, sold and conveyed by the mother, Jane McKenzie, to her two sons, William G. and Charles; (4) that William G. deeded his entire interest in such property to appellant here, Charles McKenzie, on January 14, 1930. Appellant also claims title to such property through the alleged will of his deceased brother, William G.

As to the 165-acre and the 26-acre tracts of land, appellant claims to own one-half thereof, on this contention: (1) One-sixth interest as an heir at law of his father and mother; (2) one-sixth interest through the purchase of all the interest of the only child of his deceased sister, Isabella, Mrs. Isabella Page Walker; and (3) one-sixth interest through the alleged deed and will of his brother, William G. Appellant concedes that appellees here own, in their respective rights, the remaining one-half interest in such two tracts of land.

Appellees, however, contend that as to the 350-acre tract appellant owns one-fourth thereof through purchase of a one-half interest jointly with his brother, William G. McKenzie, by the quitclaim deed of March 26, 1883, from his mother, and a one-fifth interest in the remaining three-fourths as an heir at law of his father and mother; that as to the 26-acre tract he owns only a one-fifth interest as an heir of his father and mother; and as to the 165-acre tract he owns a two-fifths interest—one-fifth by inheritance, and one-fifth through purchase from his niece, Mrs. Walker, of her one-fifth interest in such tract—all as set forth in the judgment of the court herein.

In his first proposition, complaining of the judgment entered in this cause, appellant contends that the legal effect of the judgment in the case of William McKenzie v. Powhatan Jordan, that "plaintiff take nothing," was to divest William McKenzie of whatever title he had at that time to the 350-acre tract; that such judgment was binding on all the plaintiffs to this suit, who seek to deraign title through William McKenzie, and therefore the community estate of William and Jane McKenzie had no title, interest, or claim whatsoever to such property, at the time it

was purchased by the survivor, Jane McKenzie, from McCampbell in July, 1880; that it was the separate property of Jane McKenzie, who through her quitclaim deed of March 26, 1883, conveyed the entire title thereto to her two sons, William G. and Charles.

The record before us, however, shows that William McKenzie went into full and complete possession of this land under a deed from the executors of the Kinney estate in 1867; that he maintained such possession continuously until he died thereon in 1878; that his widow and children thereafter continuously, and without any interruption, claimed, occupied, and used same exclusively, and that they were never dispossessed by any authority or any person claiming under or by virtue of the Jordan judgment; that the sale of the property by the sheriff to one John S. McCampbell under the Jordan judgment did not have the effect to disturb the possession and claims of the McKenzie family to the land, and that it would have required another independent suit against the heirs and family of William McKenzie to determine the question of title; that the settlement arranged by and between McCampbell and the widow, Jane McKenzie, whereby she concluded, after a family conference, to purchase the claim or title of McCampbell in support of her title and possession, rather than to continue long and expensive litigation, was made as a matter of practical judgment as the more economical way of protecting and holding the old home and property rather than through any fear of loss of the property by reason of the suit; and that the settlement and purchase by Jane McKenzie of the claim from John S. McCampbell was for the purpose of protecting and quieting the title to the property which they had possession of and were claiming under deeds of record; that such action was intended in fact and did in law inure to the benefit of the community estate, and the title thus quieted, perfected, or adjusted vested in Jane McKenzie and the children of herself and her deceased husband as tenants in common. The holding of the trial court to this effect, and the conclusion of such court that the quitclaim deed from Jane McKenzie to her sons, William G. and Charles, bearing date of March 26, 1883, conveyed only her one-half interest in the 350-acre tract of land, are therefore in all things sustained.

The recitations in the Jordan judgment, the several transfers of the rights acquired or claimed thereunder by and between other parties, the purchase by Jane McKenzie of the claim or title of McCampbell, to quiet her own title to the property, nor any other fact, theory, or circumstance advanced or asserted, for the purpose of affecting or concluding the right or title of Jane McKenzie and her children in and to this property, are all very definitely confronted with the undisputed facts, and legal effect, of the exclusive and continuous possession, use, and occupancy of the land by Father William McKenzie from the date of its acquisition until his death, and a like continuous possession and claim thereafter by his widow and children, until each and all of the various claimants against the original McKenzie title to the property finally passed out of the picture. Such long and continuous possession under a deed duly recorded, and under the law of this state, creates a definite legal status which is not subject to any character of presumption. Appellant's first proposition is overruled. See Akin v. Jefferson, 65 Tex. 137, 145; Medlenka v. Downing, 59 Tex. 32, 37; Bowles v. Bryan (Tex.Com.App.) 247 S. W. 276; Roberts v. Thorn, 25 Tex. 728, 734, 78 Am.Dec. 552; Jackson v. Jackson (Tex.Civ.App.) 258 S.W. 231; Welder v. Lambert, 91 Tex. 510, 526, 44 S.W. 281, 286; Creamer v. Briscoe, 101 Tex. 490, 493, 109 S.W. 911, 17 L.R.A.(N.S.) 154, 130 Am.St.Rep. 869; Speer, Marital Rights, § 380, p. 461.

Appellant's second proposition that, "where property is acquired by the survivor of the community estate after the dissolution of the marriage, it is presumptively the separate property of the survivor, and the burden of proof to show the community interest, and its extent, is upon those asserting that it is community property," states a correct rule of law, but it does not apply to the facts of this case. The 350-acre tract of land under consideration was purchased by William McKenzie from the Kinney executors, who gave him a deed thereto; he then established his home thereon; and he and his widow and children have always since that time maintained exclusive possession thereof. The land, therefore, was not "acquired by the survivor after the dissolution of the marriage." After the death of the husband and father, the surviving wife and mother only sought to, and did in fact, perfect or quiet the title to property long before acquired and already owned by the community estate, and in the undisputed and exclusive possession and control of the community estate as such. Appellant's second proposition is therefore overruled. Authorities next above cited, and Hacker v. Hacker (Tex.Civ.App.) 4 S.W.(2d) 218; Rogers v. White (Tex.Civ.App.) 194 S.W. 1001; Johnston v. Johnston (Tex.Civ. App.) 204 S.W. 469; Ford v. Weisher (Tex.Civ.App) 253 S.W. 958.

At the time Jane McKenzie bought the claim of John S. McCampbell to the 350-acre tract of land, she and her children were in possession thereof as tenants in common, asserting title and claim to the land under the title and possession of William and Jane McKenzie thereto, and they so continued to claim, use, and occupy the land without change in the title or possession until Jane McKenzie by her written conveyance of March 26, 1883, for a recited consideration of $500 to her paid by William G. and Charles McKenzie, "sold and quitclaimed to them all her right, title and interest in said land," and this instrument was duly filed for record.

Jane McKenzie had paid the balance due McCampbell on the obligation she had made to purchase his claim only fourteen days before she executed the deed to her said sons, and at which time, March 12, 1883, she secured a full release from McCampbell. She had assumed the obligation to pay McCampbell the purchase price for his claim in July, 1880; and over a period of three years she and her children, claiming and occupying the land as tenants in common, and apparently putting up a common fight, characteristic of family units in the old days, against many hardships, managed to discharge the McCampbell debt in the form of notes. The record shows that some of the money used to pay these notes and the interest thereon was furnished by William G. McKenzie from his labors as section hand on the old Texas-Mexican Railroad, and some came from the labors of Jane McKenzie and her other children on the old farm and ranch, where they herded and sheared sheep, raised livestock, etc., with the mother supervising the marketing. Jane McKenzie owned one-half interest in this property, and her children owned the balance, as heirs of their deceased father. The mother made no claim of separate ownership of the entire tract.

There is nothing in the record to warrant the contention that either William G. or Charles, at that time, made a claim or thought of claiming any interest in the property different from the other children by reason of the fact that William G. may have furnished some of his wages to help pay off the McCampbell debt. All money furnished from all family sources which was paid on the debt was for a common purpose, and for an obligation which each and all members of the family were liable to pay, inasmuch as they each owned an interest in the land. It was therefore immaterial which member or members of the family actually furnished all or any part of the money which was used to discharge the debt and clear the title. Appellant's contention that the trial court should have· submitted to the jury the question as to whether or not the 350-acre tract was purchased, in so far as the McCampbell claim was concerned, with the funds of the community estate of Jane and William McKenzie or with the funds of William G. McKenzie, is overruled. Speer's Law of Special Issues, 1932, § 16; 22 Tex.Jur. par. 5, p. 437 et seq., and authorities therein discussed. See, also, authorities above cited.

█ Through his fourth and fifth propositions, appellant complains of the refusal of the trial court to submit to the jury the issues of limitation and repudiation of cotenancy. The record is clear that appellant by proper pleading alleged that, if the relationship of cotenancy existed between appellant and appellees at the time of the sale of the 350-acre tract by Jane McKenzie to William G. and Charles, nevertheless appellant and· William G. thereafter fully repudiated such relationship; and, after full notice to all appellees, claimed, used, and occupied such property exclusively and adversely to all the world, whereby his title was perfected thereto against appellees under and by virtue of the various statutes of limitation, which he pleaded in full. Appellant urged the trial court to submit the question of repudiation of cotenancy and the several questions of his claims under his pleas of limitation to the jury, under proper charges and special issues tendered to .the court. The trial court refused to· submit either of such issues or any questions relating thereto. A careful review of the record leads us to the conclusion that such action was erroneous in both instances. ·

.We are not unmindful of the rigid rules of law which should and do apply to persons who have and hold joint interests with others in land in Texas, and especially those in such relationship who attempt or who do in fact repudiate such status, and then acquire, or undertake to acquire, the property or interest of their former concededly joint owners, through such acts of repudiation. We are mindful, also, of the rules of law which recognize such acts, and the consequences thereof, as well as the requirements and results of appropriate pleas and sustaining facts, concerning the gaining of title to property through adverse possession and under our several statutes of limitation. It is our duty to consider the established rules of law in the light of the facts before us.

It is true, as above concluded, that during the hard and trying days experienced by Mother Jane McKenzie and her children, as they struggled to preserve and· protect the title to the old homestead following the death of the husband and father, they made a common fight, and they were in fact and in law tenants in common, claiming to own, and actually occupying, the 350-acre tract of land, as well as old "Mud Lodge," the original home.

As time passed, however, and circumstances changed, members of the family found it necessary or convenient to change their residences and to form new attachments. Some left the old home entirely and engaged in the battle of life elsewhere. Some remained and fought poverty, hard times, and other foes, on, at, and near the old surroundings. It is significant that when, in 1901, seventeen years after Mother McKenzie deeded her interest in the 350-acre tract to William G. and Charles, another serious challenge was unfortunately made to the title and possession of .the McKenzies to the 350 acres, as well as to old "Mud Lodge" and the 26-acre tract, through the claimants under the so-called Schaeffer patent et al., and that when the settlements were made of this onslaught, the 350-acre tract was quitclaimed to "William G. and Charles," individually, while the 165 and 26 acre tracts were quitclaimed to the "heirs of William McKenzie." It is undisputed that William G. and Charles McKenzie fenced the 350-acre tract apart from the 165 and 26 acres; that they paid all the taxes thereon; and in 1922 they separated or divided the 350 acres into two tracts of 175 acres each; executed

and recorded their partition deed thereto; and thereafter used, occupied, and paid taxes on their respective tracts as thus partitioned. Furthermore, there is much testimony in the record to the effect that some of appellees were not only notified and apprised of the adverse claims being asserted to the property by William G. and Charles, and especially after the death of the mother, Jane McKenzie, in 1909, but they at that time complained of the acts and claims on the part of their brothers; and they, as early as 1909, consulted attorneys for the purpose of filing a "trespass suit" to protect their interests. Surely such facts and circumstances raised the issue of adverse claims and repudiation, notwithstanding the status of cotenancy which had existed in the past between the parties. However, it appears that their claims against William G. and Charles at that time related to appellees' interest in old "Mud Lodge"—the 165-acre tract and the 26 acres. Appellant asserted no adverse claim to these two tracts against his sisters. There was ample evidence adduced on the trial, and under sufficient pleadings, to not only authorize, but to require, the submission of both questions of repudiation of cotenancy and limitations to the jury, and we therefore sustain appellant's fourth and fifth propositions. Article 2189, R.S.1925, and article 2190, as amended by Acts 1931, c. 78, § 1 (Vernon's Ann.Civ.St. arts. 2189, 2190); Meadows v. Mitchell (Tex.Civ.App.) 39 S.W.(2d) 106; Young v. Blain (Tex.Com.App.) 245 S.W. 65; Peerless Fire Ins. Co. v. Barcus (Tex.Civ. App.) 227 S.W. 368; Davis v. Wagner (Tex.Civ.App.) 237 S.W. 612; American Surety Co. of N. Y. v. Thompson (Tex. Com.App.) 38 S.W.(2d) 576; Luling Oil & Gas Co. v. Edwards (Tex.Civ.App.) 32 S.W.(2d) 921; Speer's Law of Special Issues of Texas, 149, 150, 152, 255; Puckett v. McDaniel, 8 Tex.Civ.App. 630, 28 S. W. 360; Jung v. Petermann (Tex.Civ. App.) 194 S.W. 202; Wiggins et al. v. Holmes (Tex.Civ.App.) 39 S.W.(2d) 162; Toole v. Renfro, 52 Tex.Civ.App. 482, 114 S.W. 450; Little v. Wagner (Tex.Civ.App.) 5 S.W.(2d) 232; Mayes v. Manning, 73 Tex. 43, 11 S.W. 136; Church v. Waggoner, 78 Tex. 200, 14 S.W. 581; Lynch v. Lynch (Tex.Civ.App.) 130 S.W. 461; Hardin v. Wanslee (Tex.Civ.App.) 197 S. W. 1031; Illg v. Garcia, 92 Tex. 251, 47 S.W. 717; House v. Williams, 16 Tex. Civ.App. 122, 40 S.W. 414; Liddell v. Gordon (Tex.Civ.App.) 241 S.W. 750; Id.

(Tex.Com.App.) 254 S.W. 1098; Rae et al. v. Baker (Tex.Civ.App.) 38 S.W.(2d) 366; Frey v. Myers (Tex.Civ.App.) 113 S.W. 592; Myers v. Frey, 102 Tex. 527, 119 S.W. 1142; Nevill v. Hinkle (Tex.Civ. App.) 276 S.W. 324; Keith v. Keith, 39 Tex.Civ.App. 363, 87 S.W. 384; Carr v. Alexander (Tex.Civ.App.) 149 S.W. 218; Toole v. Renfro, 52 Tex.Civ.App. 450, 114 S.W. 450; Robles v. Robles (Tex.Civ.App.) 154 S.W. 230; Terry v. Terry (Tex.Civ. App.) 228 S.W. 299; McCoy v. Long (Tex. Com.App.) 15 S.W.(2d) 234; Toney v. Herman Hale Lumber Co. (Tex.Civ.App.) 36 S.W.(2d) 234.

On December 14, 1912, appellee Isabella Page, a single woman (now Mrs. Walker), as the sole heir of her deceased mother, Isabella McKenzie Page, sister of appellant, duly executed and delivered a deed to her uncle, Charles McKenzie, wherein she sold and conveyed to Charles and Leona McKenzie, husband and wife, for a valuable consideration, "all my right, title and interest in and to such real estate as I may have inherited from my mother, Isabella Page, deceased, the said Isabella Page being a daughter of William McKenzie and Jane McKenzie, deceased; especially hereby granting and conveying all my right, title and interest in and to that certain tract and parcel of land, lying and being situated in the county of Nueces, State of Texas, and being 172.1 acres out of Survey No. 419, patented to J. W. Schaeffer, etc.; intending hereby to convey all my right title and interest in and to any land inherited by me from my said grandfather, William McKenzie and my grandmother, Jane McKenzie, either direct, or through my deceased mother, Isabella Page," etc.

Such deed was duly recorded January 11, 1913. The record shows that prior to such sale and the execution of the deed above mentioned Isabella Page sought out her uncle, Charles McKenzie, or her uncle, William G. McKenzie, and asked him or them to buy her interest in the property; and, in person and by letters, discussed her interest in the McKenzie property with members of the family. It is shown that she consulted Lawyer Scott, of Corpus Christi, with reference to her interest in the property, and the question of the removal of her disabilities of minority for the purpose of conveying her interest therein; and this, more than a year before she secured the agreement of her uncle,

Charles, to purchase her interest, and for which she executed the deed above referred to. She also discussed with her Aunt Phœbe (Mrs. Grant), as early as 1909, the question of her interest in the property, and tried to sell to her. Aunt Phœbe had, with other members of the family, some of the appellees here, consulted Lawyer Pope of Corpus Christi about bringing a suit of some character against Charles and William G. It is shown that Lawyer Pope counselled with some of appellees, and wrote a follow-up letter to some of them concerning their claims and contentions; these facts and circumstances transpired approximately twenty years before appellees filed this suit. The contention now here made that appellee Belle Page Walker did not, at the time she executed the deed to her interest in the property, know of her full interest in the property which she now claims, seems almost incredible. Likewise it appears unusual that she would seek out her Uncle Charles as a prospective purchaser, after she had advised with attorneys, and execute a deed to him that did not intend or mean what it apparently plainly said. Her Uncle Charles borrowed the money to pay her for the property; and we think the record fails to show any effort or intention on his part to deceive, mislead, overreach, or defraud his niece. However, under the pleadings and evidence adduced, these were questions of fact which should have been submitted to the jury for determination, together with the pleas of laches and limitations raised by appellant against appellee Belle Page Walker. It is clear to us from the record before us that the trial court should have submitted all such fact issues to the jury. We find it our duty and we sustain appellant's sixth proposition. Barker v. Ash (Tex. Civ.App.) 194 S.W. 465; Minchew v. Morris (Tex.Civ.App.) 241 S.W. 215; Jackson v. Stockbridge, 29 Tex. 394, 94 Am. Dec. 290; Cammack v. Prather (Tex.Civ. App.) 74 S.W. 354; Gulf, C. & S. F. Railroad Co. v. Fenn et ux., 33 Tex.Civ.App. 352, 76 S.W. 597; Haskins et al. v. Henry Wallet, 63 Tex. 213; Smith v. Fly, 24 Tex. 345, 76 Am.Dec. 109.

Through his seventh, eighth, ninth, tenth, and eleventh propositions, appellant complains of the action of the trial court in refusing to give to the jury certain special charges defining undue influence on the one hand, and of overruling appellant's objections to the main charge of the court in these respects and rendering judgment for appellees on the verdict of the jury based on the issues submitted on the other hand; and for the asserted reason that such issues, as submitted, were not raised by the evidence; and that the evidence was and is insufficient in probative force to raise any issue that appellant, Charles McKenzie, exercised undue influence over the mind and will of his brother, William G. McKenzie, as to the act of making the will, dated March 12, 1927, and as to the act of making the deed, dated January 14, 1930.

It is our opinion that the trial court should have given to the jury appellant's special charges Nos. 1 and 2, as requested, wherein the appellant's theory of the law relating to undue influence was set forth more in detail, and in a correct and affirmative manner. However, in view of our disposition of the verdict and judgment on the other propositions raised by appellant, we will not further discuss this particular question.

Appellees alleged, and scores of pages of testimony were directed to the charge, that William G. McKenzie was of unsound mind; that he did not possess the requisite mental capacity to make a valid will on March 12, 1927, or to make a valid deed on January 14, 1930; that at both such times, and on each of such occasions, he was overreached and unduly influenced by his brother, Charles, who substituted his mind and will for that of William G., and that but for the exercise of such undue influence and such substitution or subversion William G. would not have made either the will or the deed; that each are therefore void, and that no property or property rights passed by or through either of such alleged instruments; that the order probating the will should be set aside, and the will declared of no effect; and that the deed should be canceled and annulled.

It is clear from the voluminous record and briefs before us that appellees, and perhaps all parties to this proceeding, considered these issues the major and primary questions in this involved suit.

It is particularly significant and a circumstance of importance, though not controlling, that the jury, after hearing all of the witnesses and considering all the evidence adduced on the trial, found as a fact that William G. McKenzie was not of unsound mind either on March 12, 1927, or on January 14, 1930. It is clear from the record before us that by far the greater

portion of the testimony adduced on the trial was directed to the charge of the lack of testamentary capacity or the unsoundness of the mind of William G. McKenzie. A careful review of the entire record reveals little evidence of any kind or character to support the allegation, and the finding of the jury, that either the alleged will or deed was executed as the result of undue influence exercised over William G. McKenzie by his brother, Charles. As a matter of fact, when we come to apply the evidence to the finding of the jury to that effect, in the light of the well-established rules of law in this state relating to such question, we have the result that there is in reality no testimony of probative force to sustain such finding by the jury; and the trial court should not have permitted such verdict or finding to stand or be considered either in support of, or as a part of, any judgment entered in this cause.

It was shown that William G. McKenzie was throughout his entire lifetime, most all of which was spent at the old home ranch, a close and confiding friend and associate of his only brother, Charles. They endured many hardships together; in all business matters on and about the old ranch they seemed to be associated somewhat as partners, even after they partitioned the 350-acre tract of land and erected their division fence thereon. William G. visited his brother frequently throughout his lifetime, and, when he came to the end of his allegedly lonesome and hermit-like existence, it was in his brother's home and presence that he finally gave up the struggle, and "laid him down to die." It is true that he went to his lawyer's office, Edward R. Kleberg, with his brother, Charles, when the alleged will was executed, and under arrangements apparently made by his brother; that Charles or his son brought the notary to their home on the old ranch when William G. executed the deed in favor of Charles, shortly before he died; that on occasions, in business deals involving cattle sales or other matters, William G. would not act without consulting his brother; but these facts and circumstances do not, of course, constitute any evidence of undue influence. All such relationships and circumstances do evidence a perfectly natural affection and devotion that should, and often does, exist between brothers—particularly when they have lived and struggled together, as was doubtless true in this instance. In the nature of things, this relationship provided the opportunity through which Charles might have unduly influenced his brother on either or both of the occasions under consideration, but the existence of the opportunity does not import the fact or give any legal force to the thought or suspicion of the existence or exercise of undue influence.

Furthermore, the fact, as some witnesses testified, that William G. may have acted, or may have been, "peculiar" in his habits or contacts, has no probative force that he could have been or was in fact unduly influenced by his brother. He might have been "peculiarly or particularly hard-headed," as is strongly indicated by the evidence. Several witnesses, who had known him for many years and saw him frequently, testified positively that he was a strong character.

Likewise the fact or suggestion that a decedent made "an unnatural" disposition of his property is of itself no evidence of undue influence. In this instance, however, it appears that William G. gave his property to the member of his own family with whom he was most closely associated, and apparently to whom he was most devoted. If the testimony furnished by appellees in these respects is to be here specially considered, it is clear that William G. was not particularly attractive physically, nor was he sought out by his relatives as a companion on account of his personal or social charms. They produced testimony to the effect that he was most unattractive; that he clothed himself in rags and dwelt in filth; that he scampered around in the cactus and catclaw like a wild man, and emitted strange noises akin to the animals which inhabited the vicinity of the old homestead. It is true, apparently, that all such testimony was originally directed to or offered in support of appellees' allegations of insanity made against William G., but, after the jury fully exonerated him from this charge, able counsel for appellees urge such alleged facts and circumstances as evidence of the exercise of undue influence over the mind and will of William G. by his brother and neighbor, Charles, in connection with the making of the will and deed in the manner, form, and to the effect shown by the record.

We have carefully searched the record before us for legal evidence of the exercise of undue influence by Charles over the mind and will of his brother. We have reviewed the testimony of William G.'s

life-long neighbors, associates, and friends. We have considered all of appellees' testimony, observed the photographs, and examined exhibits in the record. It is clear that he was a positive character. He was a surveyor of some recognized ability and energy; the record shows he did some effective work in this line shortly before his death. He told his lawyer, Edward R. Kleberg, how he wished his will drawn, and he executed the same in the ordinary manner, and had it duly witnessed by honorable and competent persons, in the absence of his brother. In brief, there are many facts and practical circumstances set forth in the record before us showing that he was not the type of individual who could be unduly influenced by anybody. On the other hand, the record is barren of any direct, positive, and pertinent evidence that Charles McKenzie, at any time, sought to influence his brother to execute either the will or deed in his favor or otherwise. No witness testified to this effect. There is not a circumstance nor any character of affirmative testimony or proof that we can find in the entire record, of any probative force, that justifies or supports the finding of the jury that the execution of either the will or the deed was secured or influenced by any act or deed on the part of Charles McKenzie or any one else.

There is no indication in the record that the deceased intended or desired to leave his property to any other member of his family or any other person. He had the legal right—and the jury definitely found that he had and possessed the legal testamentary capacity—to dispose of his property as he saw fit. The jury nor the courts have any right, nor should either have any desire, to dispose of his property for him, and against his own expressed wishes. It may seem unjust or unfortunate that this old brother, living alone in the brush, and never having experienced the blessings of a family of his very own, should overlook or fail to remember his own sisters and their children when he came to dispose of his property, shortly before "the shades of evening fell upon him." That situation and circumstance, however, was his responsibility, and it is not that of the courts. If he proceeded in accordance with law and possessed, as the jury found, the mental capacity to so proceed, the result or consequences cannot or should not be considered by the court. In this connection, and at this point in passing only, it appears from the record that the jury considered the "effect" of their answers to the issues submitted to them, "in order that the girls might get something," instead of strictly following the charge of the court and the law, and permitting the results and the responsibility to rest where such legally and rightfully belonged.

For the reasons stated, and others apparent from the record, and on the authority of the cases hereunder cited, we sustain appellant's seventh, eighth, ninth, tenth, and eleventh propositions, and hold that there was no evidence of sufficient probative force to authorize or sustain the finding of the jury on the allegation of the exercise of undue influence by Charles McKenzie over his brother, William G., in respect to the execution of either the will or deed under consideration, and the trial court should have so instructed the jury. Kuehn v. Neugebauer (Tex.Civ.App.) 204 S.W. 369; Speer's Law on Special Issues in Texas, § 597, p. 778; Barry v. Graciette (Tex.Civ.App.) 71 S.W. 309; Besteiro v. Besteiro (Tex.Civ.App.) 45 S.W.(2d) 379; Id. (Tex.Com.App.) 65 S.W.(2d) 759; Patterson v. Lamb, 21 Tex.Civ.App. 512, 52 S.W. 98; Holmes v. Houston (Tex.Civ.App.) 241 S.W. 1039; 10 Tex.Jur. § 36, pp. 66–67.

Appellant's twelfth proposition, complaining of the finding of fact by the trial court and the entry of the judgment based thereon to the effect that Isabella Page Walker was entitled to a $\frac{1}{30}$ interest in the 165 and 26 acre tracts of land by reason of the fact that Charles McKenzie procured the deed from her through fraud, or that it was executed through accident or mistake, is sustained. As above set forth, the issues raised by the pleadings in these respects should have been submitted to the jury.

Likewise the issues raised by the pleadings in reference to the question of cotenancy between appellant and appellees at the time the claims asserted under and by virtue of Schaeffer et al. patents, long after William G. and Charles McKenzie acquired the deed from their mother to the 350-acre tract, and which claims were acquired to quiet the title, should have been submitted to the jury, and not found and concluded by the court against appellant. The evidence was conflicting on the question of the repudiation or existence of cotenancy between the parties. Appellant's thirteenth proposition is sustained.

Through propositions 14, 15, 16, and 17, appellant complains of the alleged error of

the trial court in not sustaining his objections to the argument of one of the counsel for some of the appellees, on the contention that such argument was in some respects (a) improper and highly prejudicial; (b) outside of and not supported by any testimony or evidence in the record; and (c) caused the jury to consider matters not in evidence; etc., and the refusal of the court to instruct the jury not to consider such alleged improper arguments. While it appears from a careful consideration of the record before us that some of appellant's objections are well taken, and ordinarily would call for a definite discussion and decision on our part, in view of the fact, however, that this cause must be reversed for other reasons above stated, and because such grounds for complaint will not or should not exist on another trial, we pretermit any further reference thereto in this opinion.

██ This appeal presents another instance and complaint concerning a practice or condition which is not conducive to the prompt and impartial administration of justice, viz., that of "trying the jury" after the verdict is received and the judgment entered. Proper latitude should, of course, always be given to safeguard the integrity and impartiality of jury verdicts and findings, but it is apparent from the great number of such complaints and instances of necessary reversals on that account that our trial courts should more carefully instruct our jurors as to their duties and more rigidly enforce such instructions. Otherwise many involved and important lawsuits will remain undetermined solely on account of "jury misconduct", which can ordinarily be avoided.

██ As pointed out by appellant herein, it appears to be undisputed, from the testimony of some of its members, that the jury discussed and considered matters and circumstances not in evidence. Furthermore, it appears from the record that some members of the jury considered the effect and result of their answers to the special issues submitted before they reached their conclusions. It is clear, of course, that the jury should have acted solely upon the evidence presented, and should not have considered the effect of their answers. In such cases the jury should simply decide the questions submitted for their determination, and let the effect and result be settled by the court in the judgment entered on such findings.

We think, under the facts and circumstances confronting us in this record, that we should say that, if there were no other reason or requirement necessitating the reversal of this cause, on other grounds, it would be our duty to reverse it on account of the errors pointed out and set forth in the record relating to and constituting misconduct of the jury.

We overrule appellant's nineteenth proposition for the reasons apparent in our conclusions stated hereinabove. In view of the reversal of this cause, we find it unnecessary to discuss appellant's twentieth proposition concerning the finding of the trial court that the land in question was capable of being partitioned in kind.

As indicated at the outset, the nature of this case and its many issues and ramifications necessitated much writing, which we wish could have been avoided, and at the same time left us with the feeling that all propositions properly raised for our decision had been properly discussed. The case was carefully and fully pleaded and most ably briefed by all parties.

However, for the reasons stated, the cause must be reversed and remanded, and it is so ordered.